IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 14, 2010 Session

# MALCO THEATERS, INC. v. RICHARD H. ROBERTS[1], COMMISSIONER OF REVENUE, STATE OF TENNESSEE

Direct Appeal from the Chancery Court for Shelby County
No. CH-02-0491-1     Walter L. Evans, Chancellor

No. W2010-00464-COA-R3-CV - Filed April 26, 2011

This appeal concerns the franchise tax liability of a corporation operating motion picture theaters in Tennessee. The Tennessee Department of Revenue assessed deficiencies against the corporation in 2001 and 2004 after audits revealed the corporation did not include the value of rented films within its minimum franchise tax base. The corporation filed separate lawsuits in chancery court disputing the assessments. After consolidating the cases, the chancery court granted summary judgment in favor of the corporation. We reverse the grant of summary judgment, grant partial summary judgment in favor of the Commissioner of Revenue, grant partial summary judgment in favor of the corporation, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, joined.

Robert E. Cooper, Jr., Attorney General and Report, Michael E. Moore, Solicitor General, and Gregory O. Nies, Assistant Attorney General, Tennessee, for the appellant, Richard H. Roberts, Commissioner of Revenue, State of Tennessee.

James A. Delanis, John B. Burns, Nashville, Tennessee and William H. D. Fones, Jr., Memphis, Tennessee, for the appellee, Malco Theaters, Inc.

---

[1]In accordance with Rule 19(c) of the Tennessee Rules of Appellate Procedure, Richard H. Roberts, the current Commissioner of Revenue, has been substituted for his predecessors, Charles A. Trost, Reagan Farr, Loren L. Chumley, and Ruth E. Johnson.

**OPINION**

**I. Background and Procedural History**

The following facts are undisputed. The plaintiff/appellee, Malco Theaters, Inc. ("Malco"), is a corporation organized and existing under the laws of the State of Arkansas and qualified to do business in the State of Tennessee. Malco owns and operates motion picture theaters in Tennessee for profit. Malco at all times material to this lawsuit obtained reels of photographic film from multiple distributors to facilitate the exhibition of motion pictures in its theaters.[2] Malco obtained these films under a series of universal film rental/license agreements ("film agreements"). The film agreements, while varying in certain aspects, were fairly uniform. Each agreement provided Malco a right to receive a film or "print" suitable for exhibition, which Malco could repair but not alter in any way, and a limited license to display the film to the public under specified terms.

The film agreements provided several options for calculating the costs of procuring the films and the attendant rights to display them, which Malco and the distributors negotiated on a picture-by-picture, theater-by-theater basis. Factors pertinent to these negotiations included: (1) the motion picture's previous or expected popularity, (2) the length of time during which the motion picture would run, (3) the time of year, (4) the demographics of the expected audience, and (5) the theater's previous history of drawing audiences. These costs typically correlated with the number of moviegoers paying admission to attend showings of a particular film. Malco and its distributors often determined the costs of procuring and displaying the films on either a percentage-of-receipts or per-capita-attendance basis.

Most of the film agreements described the costs of procuring and utilizing the films as "film rental," whereas others described the costs as "license fees." The Tennessee Department of Revenue (the "Department") determined monies paid under the film agreements equaled rents paid to obtain and use taxable tangible property: reels of physical film. The Department consequently issued separate notices of assessment against Malco in 2001 and 2004 after audits revealed the corporation did not include the net annual rental associated with the films in its minimum franchise tax base from 1997-2003. The first notice included an assessment for the period beginning January 1, 1997, and ending December 31, 1999, in the amount of $96,900.10 plus interest. The second notice included an assessment in the aggregate amount of $110,182.64 for the period beginning January 1, 2000, and ending December 31, 2003. The Department reduced the first assessment for unpaid franchise and excise taxes after an informal conference to $72,959.00 plus interest, which totaled $102,121.00.

---

[2]It is undisputed this appeal does not concern motion pictures transmitted to Malco's theaters via satellite or any other form of digital transmission. Malco utilized only physical reels of film to display motion pictures in its theaters from 1997-2003. Malco ordinarily received these films in four smaller sections which it spliced together and placed on spools. Malco then used the spools to thread the films into projectors. These projectors displayed the images imprinted on the films onto large screens for the enjoyment of moviegoers.

Malco filed separate lawsuits against the Commissioner of Revenue for the State of Tennessee ("Commissioner") pursuant to Tennessee Code Annotated section 67-1-1801(a)(1)(B) asserting the assessed deficiencies were illegal, invalid, and incorrect. Malco requested the chancery court set aside the assessments, including all taxes and interest due thereunder, and award the corporation attorney's fees and expenses pursuant to Tennessee Code Annotated section 67-1-1803(d).[3] Commissioner responded with answers denying Malco's legal assertions and seeking awards of attorney's fees and expenses pursuant to Tennessee Code Annotated section 67-1-1803(d). The chancery court consolidated these cases and litigation ensued.

The parties eventually filed competing motions for summary judgment supported by affidavits, statements of undisputed facts, memoranda of law, and other filings. Commissioner argued the Department properly assessed deficiencies against Malco for unpaid franchise taxes during the period in question. Commissioner asserted the Department properly characterized the films as tangible property subject to the franchise tax set forth at Tennessee Code Annotated section 67-4-2104 (Supp. 1999), explaining the Tennessee Supreme Court had concluded under a similar tax statute "that the rental or leasing of these moving picture films by exhibitors in Tennessee is a rental or leasing of tangible personal property . . . and that the correct measure of the tax is the gross amount of rent paid." *Crescent Amusement Co. v. Carson*, 213 S.W.2d 27, 29 (Tenn. 1948). Commissioner further asserted the rented films qualified as "equipment" for the purposes of valuation pursuant to Tennessee Code Annotated section 67-4-2108(a)(3) (Supp. 1999).

Malco disagreed with Commissioner's legal position. Malco characterized the costs associated with procuring and displaying motion pictures in its theaters as "movie license fees" that the distributors charged based on the value of the films as intangible intellectual property. Malco rejected Commissioner's assertion that decisions treating the rental of films as rental of tangible property under the sales tax statutes of Tennessee and other states controlled the outcome of a case arising under the franchise tax statute. Malco further argued that rented films and/or movie licenses, even if they were tangible property, were not includable within the corporation's franchise tax base because they did not fall squarely within one of the four categories of rented property subject to the franchise tax. In the alternative, Malco argued the films qualified as "mobile equipment" for the purposes of valuation.

Malco offered a 1965 opinion of the Office of the Attorney General ("1965 opinion") in support of its position that the assessments were improper and illegal. The 1965 opinion stated, in

---

[3]Tennessee Code Annotated section 67-1-1803(d) provides, in pertinent part:

> The court shall award to the prevailing party reasonable attorneys' fees and expenses of litigation up to twenty percent (20%) of the amount assessed or denied, including interest after payment.

Tenn. Code Ann. § 67-1-1803(d) (Supp. 2010). Prior versions of this statutory provision provided similar relief. *See, e.g.*, Tenn. Code Ann. § 67-1-1803(d) (1998).

pertinent part:

> [O]utside the contemplation of the leased property concept would appear to be those instances where is [sic] is impossible for the corporation carrying on its chartered business to have title to the property of others which it uses for a consideration. A corporation operating a theater could not conceivably purchase the film which it shows to its patrons as its primary business. It can be obtained only from a rental agency. It is to be remembered that the underlying purpose of including the value of leased property in the minimum tax base is to prevent the avoidance of franchise tax by the artifice of leasing rather than owning property necessary to the carrying on of a corporation's chartered purposes. Additionally, property other than that listed in the leased property provisions of § 67-2909, T.C.A. should be regarded as outside its contemplation.

According to Malco, the 1965 opinion correctly recognized rented films were not includable within a corporation's franchise tax base and, thus, Malco was entitled to summary judgment.

The chancery court resolved the competing motions for summary judgment in favor of Malco. The court reasoned that "movie license fees" were not tangible property subject to inclusion in Malco's franchise tax base. Additionally, the court found neither the "movies" nor the "movie licenses" were taxable tangible property because they did not squarely fall within one of the four categories of Tennessee Code Annotated section 67-4-2108(a)(3), as strictly construed against the taxing authority. In the chancery court's view, "the uncontroverted facts" established Malco's movies and movie license agreements were not "real property;" "machinery and equipment used in manufacturing and processing;" "furniture, office machinery and equipment;" or "delivery or mobile equipment." The chancery court held, in the alternative, Commissioner could not include the films within Malco's minimum franchise tax base even if the films constituted taxable tangible property, citing Tennessee Code Annotated section 67-1-108.[4] The court accepted Malco's argument that the 1965 opinion represented the established policy of the Department regarding taxation of rented films under the franchise tax statute and concluded Commissioner's current interpretation of the statute

---

[4]Tennessee Code Annotated section 67-1-108 provided at all times relevant to this case:

> If the commissioner changes the policy of the department as to the taxability of any privilege, such policy change shall be applied to the exercise of such privileges occurring after the date of such policy change only, unless otherwise provided by law.

*E.g.* Tenn. Code Ann. § 67-1-108 (1998); Tenn. Code Ann. § 67-1-108 (2003). Malco did not cite Tennessee Code Annotated section 67-1-108 as providing a basis for relief in either of its complaints or its motion for summary judgment. The sole reference to this statutory provision is in Malco's "Supplemental Memorandum In Support of Its Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment." Commissioner, however, does not challenge the chancery court's decision to reach this issue.

-4-

violated that longstanding policy as to the tax years in dispute.[5]  In light of these conclusions, the chancery court granted summary judgment to Malco and denied Commissioner's motion for summary judgment.  Commissioner timely appealed.[6]

## II.  Issues Presented

The issues before this Court, as we perceive them, are as follows:

(1)      whether motion picture films were tangible property subject to the franchise tax from 1997-2003;

(2)      whether motion picture films, if tangible property, were includable within Malco's minimum franchise tax base;

(3)      whether the films, if taxable tangible property, fell within the category of "furniture, office machinery and equipment" or "delivery or mobile equipment" for valuation purposes;

(4)      whether the fees Malco paid under the film agreements equaled the "net annual rental" associated with the rented films;

(5)      whether this Court must summarily affirm the chancery court's conclusion that Tennessee Code Annotated section 67-1-108 prohibited enforcement of Commissioner's legal position to the tax years in question; and

(6)      whether the undisputed facts demonstrated that inclusion of rented films within Malco's minimum franchise tax base amounted to a change in policy that Commissioner could not enforce retroactively to the tax years in question.

## III.  Standard of Review

"Summary judgments are appropriate in virtually any civil case that can be resolved on the basis of legal issues alone." *CAO Holdings, Inc. v. Trost*, M2008-01679-SC-R11-CV,--- S.W.3d ---, 2010 WL 5111414, at *5 (Tenn. Dec. 15, 2010) (citations omitted).  "Because legal disputes

---

[5]The court described the tax years in dispute as 2001-2004. The actual tax years in question were 1997-2003.

[6]On January 25, 2011, the chancery court certified its judgment as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.  The court found Malco was entitled to attorney's fees and expenses as the prevailing party but reserved judgment on the amount of such fees and expenses pending the outcome of all appeals in the case.

involving the payment of taxes are frequently based on stipulated facts, they generally lend themselves to disposition by summary judgment as issues of law." *Id.* "However, the well-understood principles generally governing the review of summary judgments are equally applicable to summary judgments in proceedings involving tax disputes." *Id.* (citation omitted).

Rule 56 of the Tennessee Rules of Civil Procedure provides that a party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party has the ultimate burden of demonstrating that summary judgment is appropriate, *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)), and consequently bears the initial burden of providing a properly supported motion showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, *id.* (citing *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5).

A party will not succeed on a motion for summary judgment merely by asserting that the nonmoving party is without evidence to support a claim. *Id.* at 83-84 (citing *Byrd*, 847 S.W.2d at 215). "The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* at 84 (citing *Hannan*, 270 S.W.3d at 5). Production of evidence raising doubts about the merits of the nonmoving party's claim will not suffice. *Id.* (citing *McCarley*, 960 S.W.2d at 588). "[T]he moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* (citing *Blair v. West Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). If the moving party does not carry its initial burden, the nonmoving party has no obligation to produce evidentiary materials in support of its position. *Id.* (citing *Staples*, 15 S.W.3d at 88; *McCarley*, 960 S.W.2d at 588).

Once a moving party carries its initial burden, the focus of the inquiry shifts to the nonmoving party who must "affirmatively show facts either (a) supporting the elements of its claim or defense if it has the burden of persuasion, or (b) negating the movant's claim or defense if the movant has the burden of persuasion." Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 27:5, at 394-95 & n.49 (2011) (collecting cases). There are at least four ways in which the nonmoving party can satisfy its burden of production and defeat a motion for summary judgment:

> by pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute; by rehabilitating the evidence attacked in the moving party's papers; by producing additional evidence showing the existence of a genuine

issue for trial; or by submitting an affidavit explaining why further discovery is necessary in accordance with Tenn. R. Civ. P., Rule 56.07.

*Id.* § 27:5, at 395-96 & n.50. Courts must accept the evidence proffered by the nonmoving party as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588). "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215).

Courts must separately evaluate competing motions for summary judgment. *Trost*, 2010 WL 5111414, at *7 (citations omitted). "When considering individual competing cross-motions for summary judgment, the court must take care to resolve all factual disputes and any competing rational inferences in the light most favorable to the party opposing each motion." *Id.* (citations omitted). "With regard to each motion, the court must determine (1) whether genuine disputes of material fact with regard to that motion exist and (2) whether the party seeking the summary judgment has satisfied Tenn. R. Civ. P. 56's standards for a judgment as a matter of law." *Id.* (citation omitted). "Both summary judgment motions should be denied if the court finds that there is a genuine dispute regarding a material issue of fact with regard to both motions, or if the parties disagree as to the inferences or conclusions to be drawn from the facts material to both motions." *Id.* (internal citations omitted).

The grant of summary judgment is appropriate only where "the evidence and the inferences reasonably drawn from the evidence permit reasonable persons to reach only one conclusion—that the moving party is entitled to a judgment as a matter of law." *Id.* at *6 (citations omitted). We review a trial court's determination that the moving party is entitled to judgment as a matter of law *de novo* with no presumption of correctness. *Martin*, 271 S.W.3d at 84 (citing *Blair*, 130 S.W.3d at 763). We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.* (citing *Staples*, 15 S.W.3d at 89).

## IV. Analysis

This dispute concerns the breadth of statutes imposing franchise tax liability on Malco from 1997-2003. The franchise tax is a yearly assessment for the privilege of doing business in Tennessee. *Crown Enterprises, Inc. v. Woods*, 557 S.W.2d 491, 493 (Tenn. 1977) (citing *Mid-Valley Pipeline Co. v. King*, 431 S.W.2d 277, 280 (Tenn. 1968); *R. J. Reynolds Tobacco Co. v. Carson*, 213 S.W.2d 45, 47 (Tenn. 1948)). An entity subject to the franchise tax pays the assessment "as a recompense for the protection of its local activities and as compensation for the benefits it receives from doing business in Tennessee." Tenn. Code Ann. § 67-4-2105(b) (Supp. 2010); Tenn. Code Ann. § 67-4-2105(b) (Supp. 1999). The franchise tax is not an ad valorem property tax. *Omnicon, Inc. v. King*, 688 S.W.2d 818, 819 (Tenn. 1985). "It is levied upon the net worth or capital of the corporation." *Id.* (citations omitted). As we will explain below, Tennessee has historically required a corporation to include property owned or used in Tennessee within its minimum net worth when

determining the corporation's franchise tax base. *See, e.g.*, *Crown*, 557 S.W.2d at 492; *Tollett v. Franklin Equities, Inc.*, 586 S.W.2d 96, 99 (Tenn. 1979). The question of how a corporation should calculate its minimum franchise tax base has nonetheless remained a source of disagreement.

### A.   Development of the Franchise Tax

The genesis of the present dispute traces to the Tennessee Supreme Court's decision in *Memphis Peabody Corp. v. MacFarland*, 365 S.W.2d 40 (Tenn. 1963). The *Memphis Peabody* court considered whether the "Tennessee Franchise Tax Law," Tennessee Code Annotated section 67-2901 *et seq.*, required a corporate taxpayer using leased property in the conduct of its business to include such property in the corporation's minimum franchise tax base. *Memphis Peabody*, 365 S.W.2d at 41. Tennessee Code Annotated section 67-2902, similar to the statutes at issue here, imposed an annual franchise tax for the privilege of engaging in business in corporate form in Tennessee. Tenn. Code Ann. § 67-2902 (1955); *Memphis Peabody*, 365 S.W.2d at 42. The legislature imposed the franchise tax at the rate of "fifteen cents (15¢) on the one hundred dollars ($100), or major fraction thereof, of the issued and outstanding stock, surplus and undivided profits of each such corporation as shown by the books and records of such corporation at the close of its last calendar or fiscal year preceding the making of the sworn report hereinafter required." Tenn. Code Ann. § 67-2904 (1955); *Memphis Peabody*, 365 S.W.2d at 42. Additionally, Tennessee Code Annotated section 67-2909 provided:

> The measure of the tax hereby imposed shall in no case be less than the value of the real and tangible personal property owned or used by such corporation in this state *as shown by the books and records of such corporation* at the close of its last calendar or fiscal year preceding the making of the sworn report hereinafter required, excepting books with respect to investment costs kept pursuant to regulations of the interstate commerce commission. No corporation when paying the tax upon the minimum basis herein set forth shall be permitted to insist that the assessed valuation of the real and tangible personal property in Tennessee is greater than the actual value thereof, or that the value of said property, as shown by the books and records of such corporation, excepting books and records with respect to investment costs kept pursuant to the regulations of the interstate commerce commission, is greater than the actual value thereof. This provision is intended to fix a minimum tax base and not to substitute the value of property owned or used in Tennessee for the measure of the tax hereinbefore provided.

Tenn. Code Ann. § 67-2909 (1955) (emphasis added); *Memphis Peabody*, 365 S.W.2d at 42.

The taxpayer, Memphis Peabody Corporation, operated the historic Peabody Hotel in Memphis, Tennessee but leased the hotel property and certain improvements thereon from a separate corporate entity, Peabody Hotel Corporation. *Memphis Peabody*, 365 S.W.2d at 41. The separate corporate entity paid the franchise tax on the appropriate measure of the real property and improvements leased to Memphis Peabody Corporation. *Id.* Memphis Peabody Corporation,

however, did not include the value of the real property and improvements within its franchise tax base because it did not carry the value of the property on its books or records. *Id.* The Commissioner of Revenue disagreed with the taxpayer's treatment of the leased property in relation to the franchise tax, asserting Memphis Peabody Corporation should have included the value of the property within its minimum franchise tax base. *Id.* After the Commissioner of Revenue assessed additional franchise taxes, Memphis Peabody Corporation commenced an action to recover taxes paid under protest. *Id.* The chancery court affirmed the franchise tax assessment and dismissed the action. *Id.* The taxpayer appealed.

The Tennessee Supreme Court in *Memphis Peabody* reversed the decision of the chancery court. *Memphis Peabody*, 365 S.W.2d at 44. Our supreme court held that leased property was not properly includable within a corporation's franchise tax base where the taxpayer did not carry the value of the property on its books and where doing so would violate good accounting principles. *Id.* at 43. The court reasoned:

 If the Legislature meant that this phrase 'as shown by the books and records of such corporation' to mean anything at all, it intended the phrase to mean exactly what it says; that is, the tax should be measured by the assets of the corporation as shown by its books. Of course, this means that the taxpayer would have to keep and maintain its books and records in good faith and according to good accounting practices. It could not arbitrarily and without reason disregard assets of the corporation in making and filing its return. The proof in this case is that the books and records of the corporation were set up and kept according to good accounting practices. There is no indication of lack of good faith on the part of the taxpayer.

*Id.* The *Memphis Peabody* court accordingly held "that the basic purpose of the franchise tax law clearly indicates that property which a corporation does not own but leases in the operation of its business is not to be taken into consideration in determining its minimum franchise tax liability." *Id.*

The General Assembly soon thereafter amended the franchise tax law to counteract the holding of *Memphis Peabody*, expressly including the value of rented property within the minimum franchise tax base of a corporation. *See* 1963 Tenn. Pub. Acts, ch. 361, § 3; *see also Tollett v. Franklin Equities, Inc.*, 586 S.W.2d 96, 97-98 (Tenn. 1979). Tennessee Code Annotated section 67-2909, as amended, stated:

The measure of the tax hereby imposed shall in no case be less than the actual value of property owned, or property used, in Tennessee. In cases where part or all of the property is rented the actual value of property will be deemed to be the book value of all property owned as shown by the books and records of such corporation at the close of its last fiscal year preceding the making of the sworn report hereinafter required (excepting books with respect to the investment costs kept pursuant to regulations of the interstate commerce commission) *plus the value of the rental*

*property used which shall be determined by multiplying the net annual rental by the following multiples*:

Multiples

(A) Real property ......................................................................... 5
(B) Machinery and equipment used in manufacturing and processing..... 3
(C) Furniture, office machinery and equipment ...................................... 2
(D) Delivery or mobile equipment .......................................................... 1

"The net annual rental" shall mean the gross annual rental paid by the taxpayer less the gross rental received by the taxpayer for sub-rental. For the purposes of this section the term "used" shall mean only such property as is actually utilized by the corporation in the conduct of its principal business.

1963 Tenn. Pub. Acts, ch. 361, § 3 (emphasis added).[7]

The Tennessee Supreme Court considered the purpose and effect of this amendment in *Tollett v. Franklin Equities, Inc.*, 586 S.W.2d 96 (Tenn. 1979). In *Tollett*, a taxpayer managed but did not own a motel in Tennessee. *Tollett*, 586 S.W.2d at 97. The taxpayer did, however, own a fifty-one percent interest in the limited partnership that owned the motel. *Id.* *Tollett* concerned whether that partnership interest was "property owned" in Tennessee. *Id.* at 98. In answering this question, our supreme court delved into the history of the statute:

The revision in the statute followed immediately the decision of this Court in the case of *Memphis Peabody Corp. v. MacFarland*, 211 Tenn. 384, 365 S.W.2d 40 (1963), in which it was held that the value of property leased by a corporate taxpayer was not required to be included in the minimum measure of the franchise tax. The 1963 amendment provided for the inclusion of leased or rented property and contained a formula for its valuation. The amendment, however, also deleted the words "real and tangible personal" preceding the words "property owned or used."

The taxpayer relies upon two opinions of the State Attorney General rendered several years ago that the only change effected by the 1963 amendment was to include leased or rented property. This, however, is not all that the amendment provided. The Attorney General gave opinions that intangible property owned by

---

[7]The legislature later revised the franchise tax law and re-codified this provision at Tennessee Code Annotated section 67-2908. *See* 1976 Tenn. Pub. Acts, ch. 537, § 8. Tennessee Code Annotated section 67-2908 retained the language of the amended provision but changed the multiple applying to "real property" to 8. *Id.*; Tenn. Code Ann. § 67-2908 (1976). The revised provision further provided that "there shall not be included within the meaning hereof the value of any property while construction of same is in progress and, in addition thereto, there is no actual utilization of such property by the corporation either in whole or in part." 1976 Tenn. Pub. Acts, ch. 537, § 8; Tenn. Code Ann. § 67-2908 (1976).

taxpayers was not affected by the 1963 amendment. In our opinion, this conclusion was not justified from the revisions which were made in the statutory language. It is true that the word "tangible" was retained in the caption of the code section which the 1963 amendment revised, and indeed that word is found in the caption as quoted in the 1963 act. In the text of the revised statute itself, however, all references to real and tangible personal property were omitted, and the generic term "property" was retained without any qualification or modifying language.

*Tollett*, 586 S.W.2d at 97-98. The court concluded "the taxpayer's partnership interest is 'property,' albeit intangible, and there is nothing in the statute since its 1963 revision which excludes valuable intangible assets or property rights such as this from the franchise tax measure." *Id.* at 98.

The court's opinion on the taxpayer's petition to rehear affirmed the broad import of the 1963 amendment. The court explained:

It is clear that the 1963 amendment to the franchise tax law was enacted in response to the opinion of this Court in *Memphis Peabody Corp. v. MacFarland*, 211 Tenn. 384, 365 S.W.2d 40 (1963). *The General Assembly obviously intended to make taxable in the future the type of business arrangement utilized by the taxpayer in that case to avoid the minimum measure of the tax; namely, the leasing or renting of property.* It provided that *property rented for use by corporate taxpayers in Tennessee must be included*, and it *prescribed a method for the valuation of such assets*.

. . . .

The thrust of our holding, which we reiterate here, was that the 1963 amendment was broader than originally suggested by the Attorney General in his opinions and was not confined solely to the inclusion of property held under a lease. We have not attempted to delineate completely the effect of the 1963 amendment, but we are of the opinion that *it was designed to close more than one single loophole and, where necessary to reflect accurately the value of property owned or used in Tennessee by a corporation*, to authorize the inclusion of an intangible business interest or ownership such as is shown in this case.

*Tollett*, 586 S.W.2d at 99-100 (footnote omitted) (emphasis added) (op. on pet. to rehear). Although the legislature has amended the franchise tax laws on several occasions since *Tollett*, the statutes controlling our decision remain substantially similar to the statute in *Tollett*.

The statutes controlling our decision are the "Franchise Tax Law" formerly codified at Tennessee Code Annotated section 67-4-901 *et seq.* and the later enacted "Franchise Tax Law of

1999" codified at Tennessee Code Annotated section 67-4-2101 *et seq.*[8] Tennessee Code Annotated § 67-4-904 provided:

> (a) The privilege tax hereby imposed shall be a tax of twenty-five cents (25¢) on the one hundred dollars ($100), or major fraction thereof, of the issued and outstanding stock, surplus and undivided profits of each such corporation as shown by the books and records of such corporation at the close of its last fiscal year preceding the making of the sworn report hereinafter required.
> (b) For purposes of this section, "issued and outstanding" stock does not include treasury stock.

Tenn. Code Ann. § 67-4-904 (1998). Tennessee Code Annotated section 67-4-2106 similarly provided, in pertinent part:

> (a) The privilege tax hereby imposed on all taxpayers shall be a tax of twenty-five cents (25¢) per one hundred dollars ($100), or major fraction thereof, of a taxpayer's net worth, determined in accordance with subsection (b), at the close of the tax year covered by the required return.
> (b) For purposes of this section, for taxpayer's filing on a separate entity basis, "net worth" is defined as the difference between a taxpayer's total assets less its total liabilities computed determined in accordance with subsection (b). However, if the taxpayer does not maintain its books and records in accordance with generally accepted accounting principles, net worth shall be computed in accordance with the accounting method used by the taxpayer for federal tax purposes, so long as the method fairly reflects the taxpayer's net worth for purposes of the tax levied by this part.

Tenn. Code Ann. § 67-4-2106(a), (b) (Supp. 2000).

Although these provisions appeared to set forth the exclusive method for determining the franchise tax due, the franchise tax statutes at issue also required that "[t]he measure of the tax hereby levied shall in *no case be less* than the actual value of the real or tangible property owned or used in Tennessee, excluding *exempt inventory* and *exempt required capital investments.*"[9] Tenn.

---

[8]As we noted in *BellSouth Advertising & Publishing Corp. v. Chumley*, 308 S.W.3d 350 (Tenn. Ct. App. 2009), "[t]he excise and franchise tax statutes were substantially revised and reenacted in 1999." *Id.* at 351. The principal revision concerned the express inclusion of limited liability companies, limited partnerships, limited liability partnerships, and business trusts as entities subject to the franchise tax. Alice Marie Pettigrew, Note, *The Constitutionality of an Income Tax in Tennessee*, 30 U. Mem. L. Rev. 337, 338 (2000). As in *BellSouth*, the relevant "provisions of the current excise and franchise tax statutes and of those repealed in 1998 are substantially the same." *BellSouth*, 308 S.W.3d at 351.

[9]Prior versions of this statute provided that "the measure of the tax hereby imposed shall in no case
(continued...)

Code Ann. § 67-4-2108(a)(1) (Supp. 2000) (emphasis added).  Each statute defined property "used" in Tennessee to include only such property that a taxpayer "actually utilized" in the conduct of its principal business.  Tenn. Code Ann. § 67-4-906(a)(5) (1998); Tenn. Code Ann. § 67-4-2108(a)(6)(F) (Supp. 1999).  Importantly, each statute provided:

> In cases where part or all of the property is rented, the actual value of property will be deemed to be the book value of all property owned as shown by the books and records of such corporation at the close of its last fiscal year preceding the making of the sworn report hereinafter required (excepting books with respect to investment costs kept pursuant to regulations of the interstate commerce commission), plus the value of the rental property used which shall be determined by multiplying the net annual rental by the following multiples:
>
> Multiples
>
> (A) Real property ................................................................................ 8
> (B) Machinery and equipment used in manufacturing and processing..... 3
> (C) Furniture, office machinery and equipment ...................................... 2
> (D) Delivery or mobile equipment .......................................................... 1

Tenn. Code Ann. § 67-4-906(a)(3) (1998); Tenn. Code Ann. § 67-4-2108(a)(3) (Supp. 1999).[10]  And each statute defined "net annual rental" as meaning "the gross annual rental paid by the taxpayer, less the gross rental received by the taxpayer for sub-rental."  Tenn. Code Ann. § 67-4-906(a)(4) (1998); Tenn. Code Ann. § 67-4-2108(a)(6)(D) (Supp. 1999).

### B.  Statutory Construction

The issues presented require us to determine how the franchise tax statutes set forth above apply to the undisputed facts of this case.  Several well-established principles guide our analysis. The first of these is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope."  *Lyons v. Rasar*, 872 S.W.2d 895, 897

---

[9](...continued)
be less than the actual value of the property owned, or property used, in Tennessee, excluding exempt inventory."  Tenn. Code Ann. § 67-4-906(a)(1) (1998); Tenn. Code Ann. § 67-4-2108(a)(1) (Supp. 1999). Commissioner argues the specification added in the statute regarding tangible property does not alter our analysis because the rented movie reels were tangible property utilized in Malco's principal business. Additionally, Commissioner concedes for the purposes of this appeal that intangible property was not includable within Malco's minimum franchise tax base.

[10]The legislature amended Tennessee Code Annotated section 67-4-2108(a)(3) in 2000 to permit valuation of a corporation's property at cost less accumulated depreciation in accordance with generally accepted accounting principles.  Tenn. Code Ann. § 67-4-2108(3) (Supp. 2000).  It maintained, however, the requirement that "[i]n cases where part or all of the property is rented, *the value of rented property used shall be determined by multiplying the net annual rental by the following multiples . . . .*"  *Id.* (emphasis added).

(Tenn. 1994) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993)). "In seeking to ascertain legislative intent, we must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language." *Id.* (citing *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295 (Tenn. 1992)). "When a statute's text is clear and unambiguous, the courts need not look beyond the statute itself to ascertain its meaning." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) (citing *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009); *State v. Strode*, 232 S.W.3d 1, 9–10 (Tenn. 2007)). Courts should not seek guidance from "'the broader statutory scheme, legislative history, historical background, or other external sources of the Legislature's purpose'" if the language of the statute is clear. *Elliott v. Cobb*, 320 S.W.3d 246, 250-51 (Tenn. 2010) (quoting *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005)) (citing *Beecher*, 312 S.W.3d at 527).

If the meaning of a statute is unclear, courts may rely on established canons of statutory construction, as well as the "broader statutory scheme, the history of the legislation, or other sources" to guide the statute's construction. *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). "One of those rules of construction is 'ejusdem generis,' which means that 'where general words follow special words which limit the scope of the statute, general words will be construed as applying to things of the same kind or class as those indicated by the preceding special words.'" *State v. Young*, 196 S.W.3d 85, 104 (Tenn. 2006) (quoting *Lyons*, 872 S.W.2d at 897). "In this way, ejusdem generis limits the breadth of the general phrase so that neither the general phrase nor the specific terms are inoperative." *State v. Marshall*, 319 S.W.3d 558, 562 (Tenn. 2010) (citations omitted).

Courts choosing to employ a canon of construction such as ejusdem generis must nevertheless temper their reliance on interpretive tools with the recognition that "canons of construction, though helpful, should always be tested against the other interpretive tools at a court's disposal." *In re Estate of Tanner*, 295 S.W.3d 610, 625 n.13 (Tenn. 2009) (citations omitted); *accord In re Estate of Davis*, 308 S.W.3d 832, 842 (Tenn. 2010) (citation omitted). "Any canon of statutory construction, if applied mechanically and without attention to context, may lead to an incorrect result." *Tanner*, 295 S.W.3d at 625 n. 13. Canons of construction, including the canon of ejusdem generis, should not be used to frustrate legislative intent. *See Marshall*, 319 S.W.3d at 562 n.4 (citing *United States v. Alpers*, 338 U.S. 680, 682 (1950)); *State v. Grosvenor*, 258 S.W. 140, 141 (Tenn. 1924). We must remember "[t]he cardinal canon of statutory construction requires the courts to ascertain and to carry out the General Assembly's intent." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County*, 301 S.W.3d 196, 213 (Tenn. 2009) (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)).

The construction of tax statutes departs from the ordinary rules of statutory construction in one significant aspect: "courts must construe tax statutes liberally in favor of the taxpayer and, conversely, strictly against the taxing authority." *Am. Airlines, Inc. v. Johnson*, 56 S.W.3d 502, 504 (Tenn. Ct. App. 2000) (citing *White v. Roden Elec. Supply Co.*, 536 S.W.2d 346, 348 (Tenn. 1976); *Memphis St. Ry. v. Crenshaw*, 55 S.W.2d 758, 759 (Tenn. 1933)). It is well-settled that courts typically resolve any doubt concerning the meaning of a tax statute in favor of the taxpayer. *Id.*

(citing *Memphis Peabody Corp. v. MacFarland*, 365 S.W.2d 40, 42 (Tenn. 1963); *Carl Clear Coal Corp. v. Huddleston*, 850 S.W.2d 140, 147 (Tenn. Ct. App.1992)). "Courts may not extend by implication the right to collect a tax 'beyond the clear import of the statute by which it is levied.'" *Id.* (quoting *Boggs v. Crenshaw*, 7 S.W.2d 994, 995 (Tenn. 1928)).

Courts, however, are not required to defer to a taxpayer's strained or forced construction of a statute. "When faced by an invocation of [the rule against extension by implication], it is still the court's duty to look to and apply all of the language of the act so as to achieve equal taxation, where there is an evident intent to tax; even though this intent is ineptly expressed." *Univ. Computing Co. v. Olson*, 677 S.W.2d 445, 448 (Tenn. 1984). "[C]ourts must give effect to the 'plain import of the language of the act' and must not use the strict construction rule to thwart 'the legislative intent to tax.'" *Johnson*, 56 S.W.3d at 504 (citing *Int'l Harvester Co. v. Carr*, 466 S.W.2d 207, 214 (Tenn. 1971); *Bergeda v. State*, 167 S.W.2d 338, 340 (Tenn. 1943)). It is the duty of courts, even in tax cases, to "give full scope to the legislative intent and apply a rule of construction that will not defeat the plain purposes of the act." *Bergeda*, 167 S.W.2d at 340 (citing *Knox v. Emerson*, 131 S.W. 972, 973 (Tenn. 1910). Additionally, courts should not apply a construction of a statute that produces an absurd result. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000) (citing *State v. Legg*, 9 S.W.3d 111, 116 (Tenn. 1999)). The rule of strict construction in favor of a taxpayer does not require the court to reach a "ridiculous result . . . because some ingenious path may be found to that end." *Sherwin-Williams Co. v. Johnson*, 989 S.W.2d 710, 714 (Tenn. Ct. App. 1998) (citation omitted) (internal quotation marks omitted).

An Attorney General's opinion interpreting a tax statute is entitled to deference. *H & R Block E. Tax Servs., Inc. v. State, Dept. of Commerce & Ins.*, 267 S.W.3d 848, 861 (Tenn. Ct. App. 2008) (citing *State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995)). The persuasiveness of an Attorney General's opinion is heightened where its legal conclusions have been consistently repeated. *Id.* As this Court has noted, such opinions are "especially persuasive where . . . the State is a litigant arguing for a more expansive statutory interpretation that it had previously disavowed - particularly where that interpretation is one that has apparently never been asserted in any recorded case since the disputed language was written . . . ." *Id.* Attorney General opinions, however, are not binding on the courts. *Black*, 897 S.W.2d at 683. "[C]ourts are not required or obliged to follow them." *Washington Cnty. Bd. of Educ. v. MarketAmerica, Inc.*, 693 S.W.2d 344, 348 (Tenn. 1985); *see also Tollett*, 586 S.W.2d at 97-98 (rejecting opinions given by the Attorney General on the effect of the 1963 amendment of the franchise tax statute).

### C. Films As Tangible Property

The first question before this Court is whether the rented films were tangible property Malco utilized in the conduct of its principal business. As this Court noted at oral arguments, there is a fundamental disconnect between the parties' arguments on this issue. Commissioner framed the initial question before this Court as whether the physical reels of film were tangible property that Malco used to display motion pictures to its customers. Malco contended, to the contrary, Commissioner sought "to tax a contractual right – Malco's licenses to show movies." The chancery

-15-

court's memorandum opinion reflects this disconnect; the court interchangeably described the property at issue as both "movies and movie licenses" and "reels of movie film."[11]

Commissioner did not purport to tax any intangible property rights which Malco possessed from 1997-2003 or its "movie license fees." Contrary to the assertions in Malco's brief, Commissioner has not asserted that Malco's "movie license fees had to be calculated in one of four categories of tangible property under Tenn. Code Ann. § 67-4-2108(a)(3) of the Franchise Tax statute" or that Malco's "movie license fees" were even includable within the corporation's minimum franchise tax base. Rather, Commissioner concedes for the purposes of this opinion that Malco's intangible property was not subject to inclusion in its minimum franchise tax base. We therefore limit our initial consideration to whether the rented films were tangible property under the franchise tax statute.

We conclude the rented films qualified as "tangible property" under any acceptable definition of the term, including Malco's proposed definition.[12] A broad definition of tangible property would include any property "[c]apable of being touched and seen; perceptible to the touch; capable of being possessed or realized." *Black's Law Dictionary* 1494 (8th ed. 2004); *see also* Tenn. Code Ann. § 67-6-102(92)(A) (Supp. 2010) (defining tangible personal property under the sales tax statute as "personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses," including "electricity, water, gas, steam, and prewritten computer software"). A more narrow definition would include only "[p]roperty that has physical form and characteristics." *Black's Law Dictionary* 1254 (8th ed. 2004). Malco proposes a definition similar to the latter which would encompass "property such as a chair or watch which may be touched or felt in contrast to a contract." (Quoting *Black's Law Dictionary* 1306 (5th ed. 1979)) (internal quotation mark omitted). It is undisputed the physical reels of film were capable of being seen, touched, felt, weighed, or measured. It is also undisputed the films possessed physical form.

---

[11]Although the court stated one of the issues before it was "[w]hether the reels of movie film leased by [Malco] during the audit periods are properly classified as tangible personal property within the meaning of the franchise and excise tax statute," the body of the opinion decided only that "movie license fees" were intangible property. The court rejected the broad definition of tangible personal property under the sales tax statute in favor of the more narrow definition set forth at Tennessee Code Annotated section 67-5-501, which defined tangible personal property for purposes of the property tax statute as "personal property such as goods, chattels, and other articles of value that are capable of manual or physical possession, and certain machinery and equipment, separate and apart from any real property, and the value of which is intrinsic to the article itself." Tenn. Code Ann. § 67-5-501(12) (2006). The court reasoned movie license fees were intangible because "their value does not arise from the 'article,' i.e. the film and reel." This statement nonetheless implied the film and reel amounted to articles of value that were capable of manual or physical possession and, thus, tangible property. The court, however, decreed at the end of its opinion that "[t]he reels of movie film leased by [Malco] during the relevant audit periods were not properly classified as tangible personal property . . . ."

[12]Commissioner concedes for the purposes of this appeal that Malco's definition is "simple but appropriate."

Commissioner therefore correctly characterized the films as "tangible property" when it assessed the deficiencies at issue.

We disagree the tangible films should be classified as intangible property because the value of the films' intangible components greatly exceeded the value of the films' physical materials. The Tennessee Supreme Court addressed a nearly identical argument in *Crescent Amusement Co. v. Carson*, 213 S.W.2d 27 (Tenn. 1948). Our supreme court described the issues before it in *Crescent* as two-fold: (1) whether the rental of film was a rental of tangible personal property within the meaning of the Sales Tax Law, and (2) whether the measure of the tax was the ""the gross proceeds paid to the producer for the rental of the film print" or "the cost of the physical material in the film print." *Crescent*, 213 S.W.2d at 28. Under a nearly identical fact pattern, the court found the rented films were tangible personal property. *Id.* at 29. The *Crescent* court rejected the argument that the rental merely provided the theater operators "the privilege of using and exhibiting a copyrighted production, and that this amount[ed] only to the exercise of an intangible property right." *Id.* at 28. The court reasoned:

> There is scarcely to be found any article susceptible to sale or rent that is not the result of an idea, genius, skill and labor applied to a physical substance. A loaf of bread is the result of the skill and labor of the cook who mixed the physical ingredients and applied heat at the temperature and consistency her judgment dictated. A radio is the result of the thought of a genius, or of several such persons, combined with the skill and labor of trained technicians applied to a tangible mass of substance. An automobile is the result of all these elements, and of patents, etc.; and so on, ad infinitum. If these elements should be separated from the finished product and the sales tax applied only to the cost of the raw material, the sales tax act would, for all practical purposes, be entirely destroyed. The material used in the making of a phonograph record probably costs only a few cents. The voice of a Caruso recorded thereon makes it sell for perhaps a dollar. To measure the sales tax only by the value of the physical material in this phonograph record is to apply an impossible formula.

*Id.* at 29. The *Crescent* court notably did not base its decision on the breadth of the statutory provision defining tangible personal property. And the court did not, as Malco attempts to do here, distinguish between the tangible and intangible components of the film rental for purposes of valuation. We find the reasoning of *Crescent* persuasive on the undisputed facts before us.

This is not a case where the existence of a tangible medium was merely incidental to the purchase or rental of intangible intellectual property. The Tennessee Supreme Court in *Commerce Union Bank v. Tidwell*, 538 S.W.2d 405 (Tenn. 1976), concluded the purchase of computer software transferred from seller to purchaser through a tangible medium was not the purchase of tangible property. The *Commerce Union* court agreed with the taxpayer in that case "that while the intellectual processes may be embodied in tangible and physical material, such as punch cards and magnetic tapes, the logic or intelligence of the program is an intangible property right; and it is this

intangible property right which is acquired when computer software is purchased or leased."
*Commerce Union*, 538 S.W.2d at 407. The Tennessee Supreme Court found a "crucial difference"
existed between the magnetic tapes used to transmit computer software from the seller to the
purchaser and the films at issue in *Crescent:*

> In *Crescent* the tax was levied on the rental of a motion picture film. The film is
> inherently related to the movie; without the film there could have been no movie. .
> . . Magnetic tapes and cards are not a crucial element of software. The whole of
> computer software could be transmitted orally or electronically without any tangible
> manifestations of transmission.

*Id.* at 407-08 (citation omitted).

The *Commerce Union* court went on to distinguish the examples set forth in *Crescent* where
a purchaser has "no other viable method" of obtaining intangible intellectual property from the facts
of the case before it. *Id.* at 408. The court explained:

> A magnetic tape is only one method whereby information may be transmitted from
> the originator to the computer of the user. That same information may be transmitted
> from the originator to the user by way of telephone lines, or it may be fed into the
> user's computer directly by the originator of the program.
>
> When the information is transferred from the tape to the computer, the tape
> is no longer of any value to the user; and it is not retained in the possession of the
> user. The information on the tape, unlike the phonograph record, is not complete and
> ready to be used at the time of its purchase. It must be translated into a language
> understood by the computer. Once this information has been translated and
> introduced into the computer and the tapes returned or the punch cards destroyed,
> what actually remains in the computer is intangible knowledge; this is what was
> purchased, not the magnetic tapes or the punch cards. Transfer of tangible personal
> property under these circumstances is merely incidental to the purchase of the
> intangible knowledge and information stored on the tapes.

*Commerce Union*, 538 S.W.2d at 408 (internal citations omitted). Our supreme court accordingly
held that the taxpayer had not purchased tangible personal property when it purchased computer
software, regardless of whether the intangible intellectual property constituting the software was
transferred to the taxpayer via some tangible medium. *Id.*

The rental of tangible property to Malco under the undisputed facts of this case was not
merely incidental to the provision of intangible intellectual property. In contrast with *Commerce
Union*, the rented physical films provided the only viable and/or permissible method of exhibiting
motion pictures in Malco's theaters under the film agreements. The film agreements specifically
provided the manner in which a film exhibitor, including Malco, was permitted to exhibit motion

pictures to its customers. One of the agreements provided, for example:

> 25. CUTTING OR ALTERATION OF PRINTS. Exhibitor shall exhibit the Picture in its entirety, without any intermission or interruption, and shall not copy, duplicate, subrent or part with possession of any print thereof, nor shall Exhibitor cut or alter the same, excepting to make necessary repairs thereto, and Exhibitor shall return each print in the same condition as received, reasonable wear only excepted.

If a film distributor failed or was unable to provide a suitable film, performance under the film agreement was suspended for both parties until the breach was remedied. In the event of breach by Malco, the distributors retained the right to repossess the film and Malco could no longer show the motion picture. If a film was damaged, destroyed, lost, or stolen while in Malco's possession, Malco was required to pay the cost of replacement. Also, the film agreements ordinarily required Malco to return its rented films to the distributors at the end of the specific engagements or forward the films to other locations dictated by the distributors. Thus, Malco could not display motion pictures in its theaters without utilizing the tangible films provided under the film agreements in the specific manner provided in the films agreements.

The films in this case were akin to the design models at issue in *Thomas Nelson, Inc. v. Olsen*, 723 S.W.2d 621 (Tenn. 1987), which were indispensable to the transfer of intangible intellectual property. The taxpayer in *Olsen* was a Tennessee corporation that published Bibles and other books. *Olsen*, 723 S.W.2d at 621. The taxpayer regularly employed an Illinois corporation to design promotional concepts for the marketing of the taxpayer's products. *Id.* The Illinois corporation created several advertising design models during the progressive stages of promotional development, charging a separate fee for each model. *Id.* When the taxpayer approved a design, a third party received an appropriately developed model and produced the actual promotional material based on that model. *Id.* The parties did not dispute in *Olsen* that the design models "were capable of being 'seen, weighed, measured, felt, or touched'" under the controlling language of the use tax statute. *Id.* at 622. The taxpayer nevertheless argued the design models were not tangible personal property subject to the use tax because they "constituted a minute part of what was actually a contract to provide a service." *Id.*

The Tennessee Supreme Court concluded the design models were tangible property subject to the use tax because they were a "crucial element" of the contracts to create advertising concepts. *Id.* at 621. The court emphasized the design models "where the *only* method" by which the taxpayer could review the advertising concepts:

> Without these models, Taxpayer would have had no way to correct mistakes or change format in the promotional materials that it commissioned; without these models, Taxpayer would not have been able to make an informed decision on whether the proposed ad project was worthy of completion; without these models, Taxpayer would not have even known what advertising idea had been created until

the end product was produced.

*Id.* at 624. This was important to the *Olsen* court because it demonstrated the models "were more than merely incidental by-products to the purchase of intangible intellectual property." *Id.* "Rather these models were a crucial, *i.e.* necessary, element in the editing process that was structured so as to create promotional materials that acceptably publicized Taxpayer's product to consumers." *Id.* The court concluded the design models "were inherently related to the commissioned advertising ideas-these models were the very embodiment of the ideas." *Id.*

The *Olsen* court rejected an argument that the transfer of the design models was merely incidental to the purchase of intangible intellectual property because the "commissioned ideas *may* have been transmittable electronically through computers in a process referred to as 'computer-aided design.'" *Id.* (emphasis added). The court reasoned:

It is true that the *Commerce Union* Court noted that the Commissioner of Revenue had apparently not attempted to tax transactions whereby the taxpayer's computers had been programmed by virtue of electronic transmissions over telephone lines. This fact was deemed relevant because it illustrated that magnetic tapes and cards were not the only method whereby the purchased information could be transmitted from the originator to the user. The tapes and cards were not perceived, therefore, to be a crucial element of the allegedly taxable transactions.

Whatever capabilities for the electronic transmission of advertising ideas may have existed during the relevant audit period, the testimony is clear that Taxpayer had no such capability. The only method by which Taxpayer could review the commissioned ideas was through the tangible personal property acquired in the transactions presently at issue. Once again, we believe that this fact illustrates the crucial role that these models played in the contracts bargained for by Taxpayer.

*Olsen*, 723 S.W.2d at 624-25. The *Olsen* court accordingly held that the design models were tangible property subject to the use tax, even though they embodied intangible intellectual ideas, and subjected the "entire costs of these transactions to taxation." *Id.* at 625.

The physical films at issue were equally inseparable from their intangible intellectual property components. The fact that Malco may now receive the motion pictures via electronic transmission is irrelevant under the undisputed facts of this case. Malco submits in its brief:

Movies currently may be transmitted to theaters through satellite transmission by electronic signal with no tangible manifestation of that transmission. Movies also now are transmitted to theaters through digital computer hard drives and access to the movie is provided through electronic transmission. In the case of computer hard drive transmission, once the contents of the hard drive are downloaded onto the computer server, the hard drive is not used except as a backup in case the movie file

-20-

becomes corrupted in some way. These means of transmitting movies are well established, widespread, well publicized, and have been growing.

It is undisputed, however, that Malco did not use any of the above methods of transmission during the tax years in dispute. Rather, Malco rented physical films which it utilized in the conduct of its principal business, and the delivery, display, and return of these films unaltered was vital to Malco's contractual performance under the film agreements. The question of whether this Court would reach a different result in a case involving the rental and display of digitally transferred motion pictures is not before us.

The films Malco obtained under the film agreements were tangible property for purposes of taxation under the franchise tax statute. The rented films qualified as tangible property under any acceptable definition of the term, including Malco's proposed definition. This, in our view, is enough to conclude the films were includable within Malco's minimum franchise tax base under the plain language of the franchise tax statutes at issue. To the extent decisions evaluating the purpose or object of a transaction when determining whether the property obtained thereunder was tangible or intangible apply under the franchise tax, we conclude the rented films were inherently related, and not merely incidental, to the display of motion pictures in Malco's theaters. We find no basis upon which to conclude the rented films were intangible property.

Our determination that the rented films were tangible property under the franchise tax statutes at issue nevertheless leaves two related questions for consideration: (1) whether the films were taxable tangible property, and (2) whether the gross costs paid under the film agreements equaled the "net annual rental" associated with the films. The latter issue goes directly to the heart of Malco's argument in this appeal that Commissioner attributed an unjustifiably high value to the physical films when determining Malco's minimum franchise tax base. We find Malco's argument regarding the taxation of its "movie license fees" best viewed as an attack on whether Commissioner improperly calculated the "net annual rental" attributable to the films. This issue is only relevant, however, if we first determine the rented films were taxable tangible property.

### D. Rented Films As Taxable Tangible Property

The question of whether rented films were taxable tangible property during the applicable tax years requires this Court to consider three sub-issues: (1) whether the legislature intended to require inclusion of all rented tangible property within a corporation's franchise tax base when it amended the franchise tax statute following *Memphis Peabody*, (2) whether rented films qualified as "equipment," and (3) whether rented films were "equipment" or "mobile equipment" for the purposes of valuation. We will address these sub-issues in turn.

#### i. Is all non-exempt, rented tangible property subject to inclusion in a corporation's minimum franchise tax base?

The chancery court held that only property squarely falling within the four categories of

tangible property listed in Tennessee Code Annotated section 67-4-2108(a)(3), as strictly construed against the taxing authority, were includable within Malco's minimum franchise tax base. Commissioner submits the chancery court misconstrued Tennessee Code Annotated section 67-4-2108(a)(3) as impliedly exempting certain types of rented property from a corporation's minimum tax base. Commissioner describes the four categories of Tennessee Code Annotated section 67-4-2108(a)(3) as providing only for the valuation of tangible property, not specifically defining which types of tangible property are subject to inclusion. According to Commissioner, the chancery court's approach frustrates the purpose of an amendment enacted to close a loophole that allowed the exclusion of rented property from a corporation's franchise tax base. Commissioner concludes that all rented property is subject to inclusion in a corporation's franchise tax base, including rented films. From Commissioner's perspective, the relevant question in this appeal is not whether rented movie reels were subject to the franchise tax but what value should Malco have attributed to the rented property when determining its minimum franchise tax base.

Malco disagrees, relying heavily on the maxim that tax statutes are strictly construed against the taxing authority. Malco argues the chancery court properly applied a strict construction of Tennessee Code Annotated section 67-4-2108(a)(3) to exclude the films as non-taxable tangible property. Malco maintains that only property falling within one of the four categories of rented property, as strictly construed, is subject to inclusion in a corporation's franchise tax base. Because a motion picture film is not realty, machinery, or equipment of any kind under a strict construction of these terms, Malco argues the rented films at issue were not subject to inclusion in its minimum franchise tax base. Malco concludes there is no basis in the franchise tax statute, its legislative history, or case law to support the notion that a corporation must include all leased property within its franchise tax base.

The franchise tax statutes at issue, similar to the 1963 amendment, each provided that the measure of a corporation's franchise tax base *"shall in no case be less* than the actual value" of property owned or used in Tennessee, whether limited to real and tangible property or not. These statutes further provided that "the value of rented property used *shall be determined* by multiplying the net annual rental" by certain multiples. These provisions demonstrated a legislative intent to include, at the very minimum, the actual value of a corporation's non-exempt, rented tangible and real property within its franchise tax base during the tax years at issue. The plain purpose of the 1963 amendment and subsequent provisions retaining similar language was to ensure the minimum franchise tax base of a corporation in no case reflected less than the actual value of all property the corporation owned or used in Tennessee. Commissioner's construction of the statute is the only construction consistent with this purpose.

The 1963 amendment to the franchise tax statute served two purposes: (1) it "provided for the inclusion of leased or rented property" and (2) it "contained a formula for its valuation." *Tollett*, 586 S.W.2d at 98. Given the language used elsewhere in the statute, we are unpersuaded by Malco's argument that the General Assembly devised the categories set forth in Tennessee Code Annotated section 67-4-2108(a)(3) to limit the types of property a taxpayer must include in its franchise tax base. We instead agree with Commissioner that "[t]o construe the 'formula for valuation' of leased

property as actually providing additional loopholes for all items not expressly enumerated . . . is to ignore the clear intent of the Legislature." Any doubt concerning the meaning of the statute results from an artful construction of the taxpayer seeking to avoid the tax. Courts, however, are not bound to adopt an artful or forced construction that would frustrate the plain purpose of a tax statute. *See Bergeda*, 167 S.W.2d at 340 (stating that "the plain purpose of an inheritance tax statute is to require the payment of a tax by those who enjoy the privilege of receiving property from the estates of decedents, and the courts should so construe it as not to frustrate the power of a state to collect it"). We find no indication that the valuation categories were intended to limit which property was subject to inclusion in a corporation's minimum franchise tax; rather, the categories merely provided the methodology for valuing all rented real or tangible property utilized in a Tennessee taxpayer's principal business.

Malco's construction of the statute would impermissibly allow a corporation to calculate its minimum franchise tax base to include less than the value of the real and tangible personal property a corporation owned or used in Tennessee. Reading the statute as Malco suggests would create the same type of loophole the legislature sought to close following *Memphis Peabody*. If Malco owned the films at issue, the tangible property would clearly fall within the plain meaning of "property owned" in Tennessee. Because the four categories listed in Tennessee Code Annotated section 67-4-2108(a)(3) relate only to the valuation of rented property or "property used" in Tennessee, Malco would be unable to rely on a strict construction of Tennessee Code Annotated section 67-4-2108(a)(3) as providing a basis upon which to avoid inclusion of the films within its minimum franchise tax base. Thus, the value of the films would be includable within Malco's franchise tax base if owned but not if rented. Such an interpretation would permit different tax treatment for the same property depending on its ownership status. The legislature enacted the 1963 amendment, however, to place rented and owned property on an equal footing under the franchise tax.

We acknowledge Malco did not rent the films at issue in an attempt to escape franchise tax liability. The 1965 opinion suggested the franchise tax statute should not apply to rented property that a corporation cannot own. The plain language of the statutes at issue, however, provided no such exception; the statutes do not purport to limit their application to solely those instances where a taxpayer attempted to avoid the franchise tax through the rental of property. The statutes instead reflected an intent to include the actual value of rented property within a corporation's minimum franchise tax base in all cases except where expressly exempted. Malco's construction of Tennessee Code Annotated section 67-4-2108(a)(3) would encourage taxpayers to rent property not squarely falling within the four categories of Tennessee Code Annotated section 67-4-2108(a)(3), as strictly construed, in order to minimize franchise tax liability. Because such a construction would frustrate the plain purpose of the statutory provision requiring inclusion of rented property within a corporation's minimum franchise base, we decline to adopt it. Thus, we will construe the four categories of Tennessee Code Annotated section 67-4-2108(a)(3) as encompassing all forms of rented tangible property not specifically exempted.

### ii. Are rented films "equipment"?

Our conclusion that Tennessee Code Annotated section 67-4-2108(a)(3) requires inclusion of all rented tangible property within a corporation's franchise tax base controls our resulting construction of the term "equipment." Commissioner contends the films qualified as equipment Malco must own or rent to conduct its business in Tennessee, describing the films as "physical resources that equip the theater owner with the tools necessary to operate the theater." Commissioner argues: "Like the seats, screens, and projector, the films are equipment that Malco must have to run its business." Malco rejects this position, pointing to an affidavit stating "the movies are placed on a piece of equipment - a projector - and not used as a piece of equipment." Malco essentially argues the films equip the equipment, but the films are not equipment.[13]

The plain meaning of "equipment" broadly includes any "articles or implements used for a specific purpose or activity" in connection with a corporation's business. *Black's Law Dictionary* 578 (8th ed. 2004); *see also Random House Unabridged Dictionary* 656 (2d ed. 1993) (defining equipment as "anything kept, furnished, or provided for a specific purpose"); *but see Tibbals Flooring Co. v. Olsen*, 698 S.W.2d 60, 62 (Tenn. 1985) (citation omitted) (internal quotation marks omitted) (defining equipment as "the physical resources serving to equip a person [such as] the implements (as machinery or tools) used in an operation or activity . . . all the fixed assets other than land and buildings of a business enterprise"), *superseded by statute as recognized in AFG Indus., Inc. v. Cardwell*, 835 S.W.2d 583, 585 (Tenn. 1992) (recognizing the legislature amended the statutory provision at issue following *Tibbals Flooring Co. v. Olsen*, 698 S.W.2d 60 (Tenn. 1985) to include "equipment with all associated parts, appurtenances, and accessories"); *KTVO, Inc. v. Bair*, 255 N.W.2d 111, 113 (Iowa 1977) (holding payments for the right to use a television syndicator's tapes, films and records pursuant to a license agreement were not taxable as "equipment rental" under an Iowa use tax statute). We conclude this definition comports with the purpose of the amendment requiring inclusion of rented property within a corporation's minimum franchise tax base, whereas a more narrow definition would frustrate the legislature's intent. Because the films

_____

[13]Malco points to the affidavit of Bill Blackburn, Vice-President of Malco, stating the corporation did not use the films as "furniture, equipment, or office machinery" as dispositive of this issue. That affidavit states:

> 4. Malco does not use these movies as furniture, equipment, or office machinery. Malco does not use the movies in any was as furniture - to sit on, to eat on, to write on as you would a desk or, so far as I know, in any way like a piece of furniture. To the contrary, the movies are placed on a piece of equipment - a projector - and not used as a piece of equipment. These movies are shown from a projection room so that images are projected onto a screen - they are not used in our offices as machinery in any way.

Malco argues this affidavit establishes as "undisputed fact" that the films were not furniture, office machinery or equipment. The question of whether the films were any of these things is a legal question. Malco cannot remove the legal question from the dispute by providing a conclusory affidavit supporting its position. *See Gardner v. Insura Prop. & Cas. Ins. Co.*, 956 S.W.2d 1, 3 (Tenn. Ct. App. 1997) (citing *Riggs v. Burson*, 941 S.W.2d 44, 48 (Tenn. 1997)).

were articles used for a specific activity in connection with Malco's principal business, we conclude the films were equipment.

We disagree the rule of *ejusdem generis* should limit the term "equipment" in 67-4-2108(a)(3)(C) to "office equipment" because such a construction would frustrate the purpose of statutory provisions retaining the language of the 1963 amendment. Some tangible property, if rented, would not be included within the franchise tax base because it is not strictly *office* equipment under Malco's line of reasoning. A movie theater, for example, presumably would not pay franchise taxes on rented soda machines, projection systems, or projection screens. These items are not real property, they are not machinery and equipment used in the manufacturing and processing as contemplated by Malco, they are not furniture, office machinery or office equipment as strictly construed, and they are not delivery or mobile equipment under the definition set forth below. The same result would occur in other business contexts, creating an artifice by which businesses could avoid paying the franchise tax based on the actual value of property used to conduct its business within this State. Malco's interpretation would again result in the taxation of non-enumerated items if they were owned but not if they were rented. Such an interpretation is inconsistent with the plain purpose of the 1963 amendment to the franchise tax statute and subsequent provisions retaining substantially similar language. The 1963 amendment was intended to close the loophole which previously allowed the exclusion of leased or rented property from a corporation's franchise tax base. We should not now partially re-open that loophole under the guise of statutory construction.

### iii. Are rented films "equipment" or "mobile equipment" for valuation purposes?

The question that remains is whether the films are "equipment" or "mobile equipment" for valuation purposes. Commissioner contends "general 'equipment' such as the reels of film [Malco] uses to operate its theaters is most logically classified under the category of 'furniture, office machinery, and equipment,' while the separate category of 'delivery or mobile equipment' is reserved for delivery trucks, portable generators, etc., and other truly 'mobile equipment.'" Commissioner submits that "[c]ategorizing films as 'mobile or delivery equipment' merely because it is possible to move them would essentially eliminate any category but 'mobile or delivery equipment,' a result inconsistent with legislative intent." According to Commissioner, [i]nterpreting the leased reels of film to be 'mobile equipment' because they can be moved would effectively render the term 'equipment' in category (C) 'furniture, office machinery and equipment' almost entirely useless since *all* equipment can be relocated by some means." Further, "[c]lassifying any item that a taxpayer could potentially move as 'delivery or mobile equipment' would essentially eliminate all but that one category for all tangible property." Malco argues, on the other hand, Commissioner's approach "would completely ignore the use of the word 'mobile' in subpart D of Tenn. Code Ann. § 67-4-2108(a)(3)."

The franchise tax statute does not define "mobile equipment." Webster's Ninth New Collegiate Dictionary defines the adjective "mobile" in several ways, including: (1) "capable of moving or being moved;" (2) "changeable in appearance, mood, or purpose;" and (3) "marked by the use of vehicles for transportation." *Webster's Ninth New Collegiate Dictionary* 762 (1991).

Each party advances one of the principal definitions of "mobile" to make its case. Malco advocates a definition of "mobile equipment" as equipment that is capable of moving or being moved. Commissioner argues, on the other hand, this Court should define "mobile equipment" as equipment such as vehicles used for transportation and similar items such as generators that are specifically designed for portable use. Although we agree Commissioner's definition is the most logical, we disagree it applies under the circumstances. The term "mobile equipment" is ambiguous, and we are without any overarching statutory purpose or legislative history that provides guidance on which of the term's definitions we should accept as controlling. We must therefore liberally construe "mobile equipment" as used in Tennessee Code Annotated section 67-4-2108(a)(3)(D) in favor of the taxpayer.

We hold that "mobile equipment" is any equipment that is capable of being moved on a regular basis to further a taxpayer's business operations. We find this definition appropriate because its ensures we do not render a portion of the statute superfluous by construing "mobile equipment" as absolutely any equipment that is capable of being moved at any time, but it also construes the statute liberally in favor of the taxpayer. The effect of our construction is that most "equipment" will typically fall in the more narrowly defined category of "mobile equipment" for the purposes of valuation. Although our construction limits the type of tangible property that will qualify only as "equipment," it nevertheless retains a broad, catch-all category for tangible property that is permanently or semi-permanently attached to a corporation's real property. We therefore ensure, consistent with the purpose of the franchise tax statute, that all tangible property is capable of classification.

The rented films qualified as "mobile equipment" for the purposes of valuation in this case. The undisputed facts establish the films were capable of being moved from one projector to another and from one theater to another in the conduct of Malco's business operations. We accordingly conclude Commissioner erroneously used a multiplier of 2 when valuing Malco's rented tangible property for purposes of its minimum franchise tax base. A proper valuation of Malco's minimum franchise tax base required the inclusion of the net annual rental costs associated with the films multiplied by a factor of 1. In order to determine the resulting deficiencies, we must address whether the Department properly calculated the net annual rental costs associated with Malco's films.

### E. Valuation

The chancery court did not reach the issue of whether the gross amount paid under the film agreements to procure and utilize the films constituted their "net annual rental" for valuation purposes. The franchise tax statutes governing this dispute required inclusion of "the value of rental property" in a corporation's minimum franchise tax base. Tenn. Code Ann. § 67-4-2108(3) (Supp. 2000); Tenn. Code Ann. § 67-4-2108(a)(3) (Supp. 1999); Tenn. Code Ann. § 67-4-906(a)(3) (1998). The "value of rental property" equaled the "net annual rental" multiplied by one of four designated factors discussed above. Tenn. Code Ann. § 67-4-2108(3) (Supp. 2000); Tenn. Code Ann. § 67-4-2108(a)(3) (Supp. 1999); Tenn. Code Ann. § 67-4-906(a)(3) (1998). The franchise tax statutes defined "net annual rental" as "the gross annual rental paid by the taxpayer, less the gross rental

received by the taxpayer for sub-rental." Tenn. Code Ann. § 67-4-906(a)(4) (1998); Tenn. Code Ann. § 67-4-2108(a)(6)(D) (Supp. 1999). When it assessed deficiencies against Malco, the Department equated the gross amount paid under the film agreements with the gross annual rental paid by the taxpayer.[14]

Malco contends the assessed deficiencies improperly included the value of Malco's intangible property within the corporation's minimum franchise tax base. Malco argues the value of the physical film and reels must be separated from the value of the motion picture licenses. Although Malco does not attach a precise value to the films, it describes this value as *de minimis* when compared with the costs to obtain the intangible licensing right to display the films. Malco essentially argues a proper valuation of the net annual rental associated with the physical films includes only the value of the physical materials composing the film prints.

The Tennessee Supreme Court rejected a similar argument in *Crescent*. In addition to considering whether rented films were tangible personal property under the sales tax statute, the *Crescent* court considered whether the correct measure of the sales tax was "the gross proceeds paid to the producer for the rental of the film print" or "the cost of the physical material in the film print." *Crescent*, 213 S.W.2d at 28. The court cited with approval two cases which are pertinent to our decision: *United Artists Corp. v. Taylor*, 7 N.E.2d 254 (N.Y. 1937), and *Saverio v. Carson*, 208 S.W.2d 1018 (Tenn. 1948). The *Taylor* court, when confronting a similar question, concluded the transfer from distributor to exhibitor of a film and a license to use the film constituted a single transaction because "[t]he license to exhibit without the transfer of possession would be valueless." *Crescent*, 213 S.W.2d at 28 (quoting *Taylor*, 7 N.E.2d at 256) (internal quotation marks omitted). Likewise, the *Saverio* court held that a construction of Tennessee's sales tax act permitting a laundry operator to divide between the rental charges associated with a tangible product, a clean diaper, and the services of collecting, delivering and laundering the diapers would confuse the administration of the sales tax statute and render the law unworkable. *Saverio*, 208 S.W.2d at 1019.

The *Crescent* court found the reasoning of these cases persuasive, noting that adopting the laundry operator's interpretation in *Saverio* would have effected a "destruction of the statute." *Crescent*, 213 S.W.2d at 29. Our supreme court accordingly held that the correct measure of the sales tax was the gross amount the theater operators paid to rent the films. *Id.* Even though the intangible elements of the rented films were of significantly greater value than the physical materials composing the films, the Tennessee Supreme Court did not prorate the gross rental to correspond only with the physical materials used to create the film or to exclude the value of any license conveyed as a result of the rental.

We similarly hold the value of rented films under the franchise tax statute is not limited to the costs of the physical materials composing the film. The suggested limitation of the rental fees attributable to tangible property to encompass only the comparatively insubstantial value of the physical components of the tangible property would effectively destroy the franchise tax as applied

---

[14]The films agreements prohibited sub-rental of the films.

-27-

to rented tangible property. A corporation that rents portable generators subject to the franchise tax, for example, enters into the rental agreement to obtain both the possession of the tangible property and the right to utilize the property in its principal business. The tangible and intangible property rights provided in exchange for the rental fees are inherently related. To value the "net annual rental" of a portable generator based solely upon the portion of the fees attributable to its physical components would require application of an "impossible formula."

The situation in this case is no different. Both the physical reels of film as well as the intangible property rights to display them were essential to the exhibition of motion pictures in Malco's theaters. The tangible property obtained under the films agreements was valueless without the right to use the property and *vice versa*; the two were inescapably intertwined. This was especially true where the film agreements placed great emphasis on the relation between the license to display the films and the physical films provided. We accordingly hold that the "net annual rental" attributable to the films equaled the gross fees paid under the film agreements to procure and use the films in Malco's principal business. Although these fees ensured Malco acquired both the physical films and the intangible rights to display the films, attributing to the films a net annual rental solely based on the value of the physical materials composing the tangible item would cause a destruction of the minimum franchise tax provision. The Department therefore correctly equated the rental value of the films with the gross amount paid under the film agreements, which it should have multiplied by a factor of one when determining the correct amount of taxes due.

### F. Waiver

The next question before this Court is whether we should affirm the grant of summary judgment to Malco regardless of whether the films were taxable tangible property because Commissioner waived argument on a dispositive basis of the chancery court's decision. As Malco correctly asserts, Commissioner did not present as an issue on appeal whether the chancery court erroneously held Tennessee Code Annotated section 67-1-108 prohibited enforcement of Malco's position and Commissioner's principal brief did not contain an argument on this precise issue. Malco therefore argues Commissioner waived this issue, providing a basis to affirm the chancery court regardless of our decision on the more weighty questions concerning the nature and taxability of rented films under the franchise tax statutes. Malco argues the chancery court's holding on this issue, if undisturbed, would provide an independent basis to affirm the judgment regardless of whether the rented films are taxable, tangible property. Commissioner disagrees, contending in his reply brief that waiver did not occur because he raised and briefed the "actual issue" before this Court: "whether the value of Malco's leased films must be included in the minimum franchise tax base pursuant to the requirements of the applicable statutes."

If a party does not raise or adequately argue an issue on appeal, the issue is waived. *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) (citations omitted). This rule extends to situations in which a party does not present an issue for review but nonetheless argues the issue in a principal or reply brief. *See id.* As Justice Holder has explained, "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal

questions presented and argued by the parties before them. . . . " *State v. Northern*, 262 S.W.3d 741, 767 (Tenn. 2008) (Holder, J., concurring in part and dissenting in part) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)) (internal quotation marks omitted). Thus, "appellate courts may properly decline to consider issues that have not been raised and briefed in accordance with the applicable rules." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009) (citing *State ex rel. D'Amore v. Melton*, 212 S.W.2d 375, 376 (Tenn. 1948)). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments. . . ." *Sneed v. Bd. of Pro'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). It is likewise not the role of the courts, trial or appellate, to determine which issues a litigant should present for appellate review. *See* Tenn. R. App. 27(a)(4), (b); Tenn. R. App. 13(b). We agree Commissioner raised and argued on appeal the two issues most heavily disputed before the chancery court but that does not excuse his waiver of a third, controlling issue. Commissioner did not raise or argue as an issue in his principal brief whether the chancery court erroneously applied Tennessee Code Annotated section 67-1-108 to the undisputed facts of this case. Commissioner therefore waived this issue, which we agree would provide an independent basis to affirm the chancery court's decision.

We will nevertheless reach the merits of this issue. Appellate courts maintain discretion to consider issues not properly presented on appeal. *Waters*, 291 S.W.3d at 881 n.10 (citing Tenn. R. App. P. 13(b)). Rule 13 of the Tennessee Rules of Appellate Procedure provides that an appellate court "may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." Tenn. R. App. P. 13(b); *Waters*, 291 S.W.3d at 881 n.10; *Burk v. RHA/Sullivan, Inc.*, 220 S.W.3d 896, 902-03 (Tenn. Ct. App. 2006) (citation omitted). The Advisory Commission Comment to subdivision (b) of Rule 13 explains:

> This subdivision deals with the very difficult question of when an appellate court should consider an issue not raised by the parties. Generally speaking, control over the issues should reside in the parties, not in the court. Accordingly, this subdivision provides that review will typically extend only to the issues set forth in the briefs. Only the absence of subject-matter jurisdiction, whether at the trial or appellate level, must be considered by the appellate court regardless of whether it is presented for review. Cases appealed to the wrong appellate court must be transferred pursuant to Rule 17 of these rules. In all the other situations described in this subdivision, the appellate court has discretion to decide whether it will consider a matter not raised by the parties. It is intended that this discretion be sparingly exercised.

Tenn. R. App. P. 13 advisory comm'n cmt. subdivision b. While enforcing the Department's waiver of this issue would provide a convenient basis for resolution of this appeal, we conclude in our discretion the factors set forth in Rule 13 support consideration of this issue on the merits. Although we rarely employ Rule 13 to consider issues not properly presented, we find consideration of this issue particularly appropriate where Malco briefed the issue in its appellee's brief and Commissioner briefed the issue in his reply brief.

## G. The 1965 Opinion As Public Policy

The final question before this Court is whether the undisputed facts demonstrated that inclusion of rented films within Malco's franchise base constituted a change in policy Commissioner could not enforce retroactively to the tax years in question. Tennessee Code Annotated section 67-1-108 provided during the time period relevant to this appeal:

> If the commissioner changes the policy of the department as to the taxability of any privilege, such policy change shall be applied to the exercise of such privileges occurring after the date of such policy change only, unless otherwise provided by law.

Tenn. Code Ann. § 67-1-108 (1994); Tenn. Code Ann. § 67-1-108 (1998); Tenn. Code Ann. § 67-1-108 (2003).

Malco contends that the chancery court correctly determined the 1965 opinion of the Tennessee Attorney General's Office represented the established policy of the Department. From Malco's perspective, the decision to include rented films within its franchise tax base directly contravened the 1965 opinion and, therefore, constituted a change in policy. Malco argues Commissioner could not retroactively enforce the change in policy to the years in question. Commissioner, in his reply brief, wholly disagrees with Malco's characterization of the 1965 opinion as the established policy of the Department. Commissioner submits there is no factual basis to support the conclusion that the 1965 opinion was the policy of the Department and that "merely issuing an assessment after the Taxpayer has gotten away with noncompliance for years in the past is not a 'policy' change as contemplated by Tenn. Code Ann. § 67-1-108." Commissioner adds that "properly enforcing the tax law is not a 'policy' decision – it is the statutory duty of the Department and there is no discretion to choose to follow the law or not."

We conclude the undisputed facts do not demonstrate the 1965 opinion served as the policy of the Department as to the taxability of rented films. Malco has pointed this Court to no authority supporting a finding that the 1965 opinion, by its mere issuance, established the policy of Department concerning the taxability of rented films under current or prior franchise tax statutes. Tennessee Code Annotated section 67-1-108 implicitly recognizes Commissioner is the executive official, not the Attorney General, charged with establishing and changing the policy of the Department as to the taxability of any privilege. It is consistent with Tennessee Code Annotated section 67-1-102, which recognizes Commissioner's powers to perform the duties imposed in the tax code, Tenn. Code Ann. § 67-1-102(a) (Supp. 2010); and Tennessee Code Annotated section 67-1-101, which provides Commissioner "all such incidental powers as may be necessary to carry out and effectuate the purposes" of the tax code, Tenn. Code Ann. § 67-1-101(b) (2006). The Attorney General's duties related to the implementation of tax policy, on the other hand, are limited to providing legal advice and written legal opinions on matters falling within the discharge of Commissioner's official duties. Tenn. Code Ann. § 8-6-109(5), (6) (Supp. 2010). Thus, although the Attorney General is vested with authority over "[t]he trial and direction of all civil litigated

matters and administrative proceedings in which the state of Tennessee or any officer, department, agency, board, commission or instrumentality of the state may be interested[,]" Tenn. Code Ann. § 8-6-109(b)(1); we cannot agree with the suggestion that an opinion providing legal advice to Commissioner *ipso facto* establishes the policy of the Department as to the taxability of any privileges discussed therein.

The fact that Commissioner has never publicly repudiated the conclusion of 1965 opinion regarding the taxability of rented films is irrelevant because Malco has not demonstrated the 1965 opinion represented the policy of the Department in the first instance. Malco submits the 1965 opinion "has remained the announced policy of Commissioner for the past forty-five years" but provides no undisputed facts to support this assertion.[15] The undisputed facts in the record do not establish Commissioner relied upon the 1965 opinion as the policy of the Department, incorporated the 1965 opinion as the policy of the Department, informed corporate taxpayers the 1965 opinion represented the policy of the Department, or otherwise applied the reasoning of the 1965 opinion in a manner that would support a conclusion that it amounted to the policy of the Department. Although the undisputed facts establish Department did not question Malco's previous treatment of the rented films after an unspecified number of prior audits, we are without information on the circumstances surrounding the non-inclusion of the rented films. We are unable, for example, to consider how many occasions the Department affirmed Malco's treatment of the rented films after audit or whether the Department expressly acknowledged Malco's exclusion of the rented films from its minimum franchise tax base. We also have no basis upon which to decide whether Commissioner declined to question Malco's exclusion of the rental fees from its minimum franchise tax base as a matter of error or rather "pursuant to a 'policy' with statewide application." *See Misenheimer Saw & Tool, Inc. v. Huddleston*, 03A01-9406-CH-00226, 1994 WL 652155, at *7 (Tenn. Ct. App. Nov. 21, 1994).

Moreover, the undisputed facts give reason to conclude Commissioner may have effectively departed from the prior policy of the 1965 opinion when issued its first notice of assessment against Malco in 2001. "It is possible for officials charged with the interpretation and administration of revenue laws to change their interpretations and re-examine them, despite previous interpretation and construction extending over a period of many years." *Illinois Cent. Gulf R.R. v. State*, 805 S.W.2d 746, 749 (Tenn. 1991) (citing *Carr v. Chrysler Credit Corp.*, 541 S.W.2d 152, 155 (Tenn. 1976)). Although Tennessee Code Annotated section 67-1-108 prohibits retroactive enforcement of such changes, Commissioner is permitted to enforce a new interpretation that amounts to a change in policy on a prospective basis. The undisputed facts, however, do not address whether Commissioner took any actions that would permit enforcement of the allegedly new policy against Malco for some or all of the tax years in dispute. It is therefore not entirely clear whether and to what extent Tennessee Code Annotated section 67-1-108 prohibited the Department from including the value of the rented films within its separate assessments. Because genuine issues of material fact preclude

---

[15]Neither Malco's memoranda at summary judgment nor its appellate brief cite any evidentiary support for the assertion that the 1965 Attorney General's opinion has been established policy of Commissioner for decades.

the grant of summary judgment in favor of either party on this issue, we reverse the chancery court's decision.

## V. Conclusion

We reverse the decision of the chancery court, grant Commissioner partial summary judgment, grant Malco partial summary judgment, and remand for further consideration consistent with this opinion. Costs of this appeal are taxed to the appellee, Malco Theaters, Inc., for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE